George B. McLane et al., Plaintiffs, v. Louis Romano et al., Defendants, James Crowley, Appellant.

Gen. No. 41,766.

Heard in the second division of this court for the first district at the June term, 1941. Opinion filed December 30, 1941.

HAROLD L. LEVY, of Chicago, for appellant; LAWRENCE S. JACOBSON and GRENVILLE BEARDSLEY, both of Chicago, of counsel.

CHARLES E. McGUIRE, of Chicago, and THOMAS J. COURTNEY, State's Attorney, for appellees; CHARLES E. McGUIRE, of Chicago, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

An order was entered finding James Crowley, respondent, "guilty of the charge of contempt of this court" and fining him $100. It was further ordered that unless he paid said sum within forty-eight hours to the clerk of the circuit court he would stand committed to the county jail of Cook county, Illinois, until said sum was paid. Respondent appeals from the judgment order.

By an order of this court the instant appeal was consolidated for hearing with the case of *People v. Crowley,* 312 Ill. App. 381 (Abst.), wherein Crowley seeks to have the judgment order of contempt reviewed by writ of error. We are this day filing an opinion in that suit.

On May 31, 1940, a complaint was filed by George B. McLane et al. against Louis Romano, James Crowley et al. Plaintiffs sued as members of Bartenders and Beverage Dispensers Union, Local No. 278 (hereinafter called the union), a voluntary unincorporated labor organization affiliated with Hotel and Restaurant Employees International Alliance

and Bartenders International League of America. The complaint charged that the union had on hand in various funds more than $250,000; that certain evil disposed persons were organized into a syndicate to force the union by threats of violence and death to pay it large sums of money; that in March, 1935, the syndicate demanded $500 from plaintiff McLane, who was the business agent of the union; that the syndicate forced McLane to cause the employment of Romano as business agent; that in September, 1938, the syndicate caused McLane to procure the election of Romano as president of the union; that on August 4, 1939, certain members of the syndicate told McLane to be inactive as business agent and to follow Romano's lead, and that he would still receive his salary; that Romano appointed Crowley, defendant, secretary-treasurer of the union and appointed Panton, defendant, business representative in place of McLane; that Romano accused McLane of conspiring against the union; that plaintiffs fear charges will be preferred against them and that they cannot secure a fair trial upon the charges; that the salary of McLane as business agent has been stopped and he has been deprived of his office; that on May 29, 1940, the plaintiffs were notified that charges had been filed against them and to appear for trial on June 3, 1940; that the charges were not filed in good faith and the trial will be unfair; that it is the purpose of defendants to convict plaintiffs upon false charges and expel them from the union, and thereby plaintiffs will lose the right to death and sick benefits, and McLane will lose his salary as business agent at $200 per week; that defendants have control of the union and are about to loot it of large sums of money; that if the court would take charge of the union, appoint a receiver and hold an election under the protection of the court, the members of the union would elect officers of their choice and remove the syndicate from control; that plaintiffs sue on behalf of themselves and as representatives of

the 4,800 members of the union. Plaintiffs prayed that defendants account for the funds of the union, that a receiver be appointed to take charge of the funds and assets of the union, and that the court, through the receiver, call an election for the purpose of electing officers at which only eligible members of good standing shall be eligible to vote under the protection of the court; that defendants be enjoined from interfering with the officers of the union and any of the members of the union, from threatening, coercing and intimidating them, from interfering with McLane as business agent and from interfering with his compensation, and from filing charges against him and other plaintiffs, and that defendants be enjoined from removing any funds from the treasury of the union. On May 31, 1940, a temporary injunction was entered restraining defendants from enforcing the by-laws of the union in respect to elections; from threatening, coercing or intimidating plaintiffs; from interfering with McLane as business representative, and from interfering with his compensation; from molesting, striking, etc., plaintiffs; from filing charges against them; from trying them; from interfering with their membership in the union; from claiming that they are not members in good standing; from expelling or disciplining them, and from drawing or expending any of the funds of the union until the further order of the court. Defendants filed an answer denying all of the material allegations of the complaint and also filed a counterclaim in which they charged violations of the constitution and by-laws by plaintiffs, charged that plaintiffs filed the suit when an audit by an independent firm of certified public accountants showed McLane to be short in his accounts, and with having failed and refused to account and produce vouchers for funds of the union, amounting to $152,091.01; charged that McLane is a notorious hoodlum, gunman, racketeer, habitual drunkard, and a bootlegger during the prohibition era; that he is under

indictment for robbery with a gun and assault with intent to commit murder. The counterclaim also charges that plaintiffs and divers unknown persons conspired to obtain control of the union; that they have converted $151,091.01 belonging to the union; that they have secreted and concealed cancelled checks and financial records of the local union, and prays an accounting and an injunction restraining plaintiffs from burning and destroying the financial records of the union and from threatening injury or violence to defendants and counterclaimants. The answer of plaintiffs to the counterclaim denied all of the material allegations of the answer and counterclaim.

On August 16, 1940, an order was entered which states that as the parties have stipulated that a receiver be appointed the court appoints Roy D. Keehn receiver of the union. This order is a lengthy one, and upon the consideration of this appeal it is only necessary for us to notice the following part of the order:

"It Is Further Ordered, Adjudged and Decreed that at such time hereafter as this court may order, but not prior to the time provided by said by-laws for the next election, said receiver shall call an election for the purpose of electing officers of said Local Union, and shall conduct and supervise said election to the end that, without coercion, intimidation or fear, the members of said Local Union who are eligible to vote and participate in said election shall be privileged to choose, select and elect such officers of said Local Union as they shall deem most properly fitted to conduct the affairs thereof, according to the Constitution and by-laws governing said Local Union, and shall see that all eligible members of said Local Union are protected in the exercise of such right of suffrage, and that said election shall be held under the Australian ballot system, and the poll shall be held open sufficiently long to enable all of the members of said Local Union, regardless of their hours of work, to cast their ballot

thereat, and shall report to this court the results of such election. At such election said receiver shall prepare the ballots, appoint proper judges, clerks and tellers, and see that said election is fair in every particular. Prior to the holding of said election said receiver shall report the nominations for all offices to be filled, the names of the persons so nominated, and the eligibility of such persons who aspire to such offices under the rules, by-laws and Constitution governing said Local Union.''

On October 2, 1940, the court entered an order in which the receiver is given directions as to the manner in which nominations for the offices of the union shall be made. This order also directs the receiver to prepare a list of all members of the union that appeared to be eligible to vote at the election and to file the list with the court, and at the same time post a copy thereof in a prominent place in the club rooms of the local union; that all proper persons who wished to object to the eligibility of a member posted on the eligible list are ordered to file objections with the receiver or with the court on or before November 4, 1940, and that all objections so filed will be heard by the court on November 6, 1940, at 2 o'clock p.m.; that the receiver shall obtain the names of all persons who intend to be candidates and as soon as such names are available the receiver shall report the same to the court, and if any member has any objection to the eligibility of any candidate he shall file the same with the receiver, and that the court will hear the objections.

On January 4, 1941, by leave of court, the following ''Petition for Contempt Citation'' was filed in the cause:

''George B. McLane et al.  
        vs.         No. 40 C 5061.  
Louis Romano et al.

''Petition for Contempt Citation.

''1. Your petitioner represents that he is the duly appointed, qualified and acting receiver of the Bar-

tenders and Beverage Dispensers Union, Local 278, in these proceedings; that he was appointed under date of August 16, 1940, and is still acting as such receiver.

"2. That under the order and directions of this court, your petitioner as receiver is conducting an election for officers of said union to be held on January 6, 1941.

"3. That one James Crowley, the secretary and treasurer of said union, circulated to the membership of said union on or about the 2nd day of January, 1941, a certain letter, a photostatic copy whereof is attached hereto and made a part hereof.

"4. That in said letter the said Crowley did make the following statement:

" 'Nor has the Tribune or any one else told you that your Local was suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because the receiver failed to pay the per capita tax to these organizations when due, although I have requested him again and again since his appointment six months ago, to pay these obligations on time.'

"5. Your petitioner respectfully represents that he is informed and believes, and upon such information and belief alleges the fact to be that said Local No. 278 was not suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because the receiver failed to pay the per capita tax to these organizations when due, and your petitioner therefore upon such information and belief alleges that said statement by said Crowley, 'That your Local was suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because the receiver failed to pay the per capita tax to these organizations when due,' is and was false, and upon information and belief your petitioner represents that said statement is and was known to the said James Crowley as false.

"6. Said letter further contains the statement as a part of the statement above quoted, the following:

" 'Although I have requested him again and again since his appointment six months ago, to pay these obligations on time.' Your petitioner denies that said Crowley 'requested him again and again since his appointment six months ago, to pay these obligations on time,' and represents that said statement is false, and was and is known to the said James Crowley to be false now and at the time said letter was circulated.

"7. Wherefore, your petitioner represents to this court that by and through the foregoing statements your Receiver and this Court have been brought into disrepute, and that said statements constitute contempt of this Honorable Court.

"Wherefore, your petitioner prays that this court cause to be issued to and against the said James Crowley its direction and citation ordering and directing that the said James Crowley be and appear before this Honorable court to show cause, if any there be, why he should not be punished for contempt of court.

[signed] "Roy D. Keehn,<br>Receiver."

Attached to the petition was a photostatic copy of the letter, which reads as follows:

"BARTENDERS AND BEVERAGE DISPENSERS' UNION<br>
Local No. 278<br>
Affiliated with Chicago, Illinois and American<br>
Federations of Labor<br>
10 North Clark Street—15th Floor<br>
Telephone Franklin 8948<br>
Chicago, Ill.

"Dear Brother:

"Do you know the FACTS or do you believe in Propaganda?

"I have been maligned by James Doherty, a reporter of the Chicago Tribune, by being called the Nitti Candidate.

"I DO NOT know Nitti or his so-called gang.

"I owe allegiance to no one EXCEPT the Members of Local 278.

"I will take orders from no one EXCEPT the Members of Local 278.

"I am not controlled by any gang nor have I any connections with gangsters.

"I have no police or criminal record.

"I am YOUR CANDIDATE for President seeking to keep our Union free from Gangsters, Receivers and Newspaper Reporters of the calibre of James Doherty of the Chicago Tribune.

"During the eight years that I have been associated with our International Union and Local 278, I have organized upwards of 4,300 members for the various Locals affiliated with the Local Joint Executive Board, including 800 members for Local 278. I have been instrumental in unionizing 34 of the largest hotels in the City of Chicago, including the Palmer House, Blackstone, Drake, Morrison, La-Salle, Chicagoan, Atlantic, Windermere, Sovereign, Shoreland and Fort Dearborn hotels; securing wage increases for their employees to the extent of $237,-000.00 ANNUALLY; also securing for them BETTER WORKING CONDITIONS, SHORTER HOURS and, for the first time in the history of the industry, VACATIONS WITH PAY.

"Rumors have been circulated recently throughout the membership that I am supporting various candidates to succeed me as Secretary-Treasurer of Local 278. I wish to make it clear that I am supporting John Schoonover for Secretary-Treasurer and ask you to cast your vote for him. He is honest, capable and has a clean labor record for the past twenty-nine years, and if elected he will continue the program of improvements and safeguards installed by me in the management of the finances of your Local.

"In line with their campaign of vilification, the Chicago Tribune devoted its New Year's Eve headline to the announcement of the suspension of your Local

from the Illinois State Federation of Labor. What the Tribune failed to tell you is that we have also been suspended by the Chicago Federation of Labor. Nor has the Tribune or any one else told you that your Local was suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because the Receiver failed to pay the per capita tax to these organizations when due, although I have requested him again and again since his appointment six months ago, to pay these obligations on time.

"Such Are the Facts.

"As for Propaganda, need I point out that the daily articles concerning your Union and me appearing anywhere from the front to the obituary page of the Chicago Tribune are little more than fabrications of myth, concocted in the mind and executed by the pen of the Tribune reporter, James Doherty, who, irked, because he failed to secure the appointment of his personal friend as Receiver for our Union, has resorted to every scheme possible, even to wholesale misquoting of persons concerned, endeavoring in that manner to sway you away from the real issue of this campaign. That issue, I repeat, is to run the Union FOR its Members, BY its Members, without benefit of Receivers, Crime Commissions, Employers' Associations or Writers of vicious propaganda which will continue to appear until the last vote is counted. Your vote for the enclosed ticket rather than for the Tribune-Doherty-Sponsored-Slate headed by Austin Steeves, will be proof that you are able to make an intelligent selection at this crucial election.

"I would much prefer to have been able to call on you in person to tell you what has transpired since I was elected Secretary-Treasurer of your Local on March 25, 1940. I have been unable to do so because I have been in court almost constantly and working at the Union office to safeguard your interests.

"Fraternally yours,
"James Crowley,
"*Secretary-Treasurer.*

"BE SURE TO VOTE MONDAY, JANUARY SIXTH
  9:00 A. M. to 9:00 P. M.
  Room 741 County Building
  Clark & Washington Streets
BRING YOUR UNION BOOK WITH YOU."

The trial court ordered respondent to show cause, on January 7, 1941, why he should not be held in contempt of court; that "this order is entered without notice upon good cause having been shown." On January 6, 1941, at the election held under the direction of the receiver, respondent, Crowley, was elected president of the union.

On November 12, 1940, the following stipulation was filed in the cause:

"IN THE CIRCUIT COURT OF COOK COUNTY
"GEORGE B. McLANE, et al.
        —vs—                     No. 40 C 5061
LOUIS ROMANO, et al.

"STIPULATION

"It is hereby stipulated by and between all of the parties hereto, both plaintiff and defendant, by their respective attorneys, that the complaint and answer thereto, counterclaim and answer thereto, and this cause, be dismissed without costs, all costs having heretofore been paid.

"A. C. LEWIS
  Attorney for Plaintiffs
"HAROLD L. LEVY
  Attorney for Defendants"

This stipulation and a motion to dismiss in accordance with the stipulation were taken under advisement by the court and denied on December 5, 1940, in a "Memorandum" order filed with the clerk of the court, which states, *inter alia,* that six days after the stipulation to dismiss was filed and the motion to dismiss made, fifty members of the union, by an attorney, asked leave to intervene and to file objections to the

motion of plaintiffs to dismiss the suit, that the motion to intervene was resisted by plaintiffs and defendants but that the court allows the petitioners to intervene, and provides that the receiver continue in possession of the property and funds of the union. The order further provides that the receiver proceed with the conduct of the election.

Respondent filed a motion to strike the petition and discharge the rule, upon the grounds, *inter alia,* that "the petition was legally insufficient, because not positively verified and because the language of the letter attached to the petition could not reasonably be taken or construed as calculated to impede, embarrass or obstruct the court in the due administration of justice, and this publication was not and could not be contempt of the court, and the relief prayed for was in derogation of the rights of free speech and free press as guaranteed by the constitutions of this State and of the United States." The motion to strike was denied and respondent was ruled to answer the petition. We will refer to such parts of the answer as we deem material upon the instant appeal: It alleges that at the time of the filing of the stipulation and the entry of the motion to dismiss the cause no person had sought to intervene as a party in the cause, nor was any petition for leave to intervene presented to the court until about two weeks after the filing of the said stipulation and the making of the motion to dismiss, and the court was therefore without jurisdiction to enter any order in the cause save one dismissing the cause and terminating the receivership. The respondent admitted that on or about January 2, 1941, he circulated to the membership of the union the letter, a copy of which was attached to the petition of the receiver. In answer to the allegations contained in paragraph 5 of the petition, respondent denies that the statement contained in said letter "that your Local was suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because

the receiver failed to pay the per capita tax to these organizations when due'' was false, and he denies that said statement was known by the respondent to be false. Anwering the allegations contained in paragraph 5 of the petition, respondent alleges that at the time the letter was written and circulated, ''this respondent verily believed in good faith,•that the sole reason for the suspension of Local 278 by the Illinois State Federation of Labor and the Chicago Federation of Labor was the fact that the per capita tax payable to those organizations was not paid when due.'' Respondent denies that the statement contained in paragraph 6 of the petition was false and denies that it was known to respondent to be false at the time the letter was circulated and alleges that said statement was true. The answer then continues as follows:

''7. This respondent denies that the said receiver or this court have been brought into disrepute by the foregoing statements, or either statement or any part thereof, as alleged in paragraph 7 of said petition, and he further denies that the said statements, or either of them, or any part thereof constitute contempt of this Honorable Court. Further answering the allegations contained in paragraph 7 of said petition, this respondent alleges that the said statements were not intended by this respondent or calculated by him to bring this court or said receiver into disrepute, all as more fully appears in the allegations herein contained, and denies that this respondent intended to or in any manner directly or indirectly by said letter did, impede, interrupt, embarrass or interfere with this court or its receiver in the administration of justice and in the administration of the affairs and management of the property of said Bartenders and Beverage Dispensers Union Local 278.

''8. Further answering the said petition, this respondent alleges that the Illinois State Federation of Labor is a voluntary unincorporated association

composed of numerous other voluntary associations known as Local Labor Unions throughout the State of Illinois, which said Illinois State Federation of Labor is affiliated with the American Federation of Labor; that the said Illinois State Federation of Labor is governed by a constitution which is now, and has been at all times since prior to December 12, 1940, in full force and effect; that a true, correct and complete copy of said constitution of the Illinois State Federation of Labor is attached hereto . . . and made a part hereof, as fully as though the same were set out in full at this point.

"9. This respondent further alleges that the Chicago Federation of Labor is a voluntary unincorporated association composed of numerous other voluntary associations known as Local Labor Unions throughout the city of Chicago; that said Chicago Federation of Labor is governed by a Constitution which is now, and has been at all times since prior to December 12, 1940, in full force and effect; that a true, correct and complete copy of said Constitution of the Chicago Federation of Labor is attached hereto . . . and made a part hereof as fully as though the same were set out in full at this point.

"10. That the Bartenders & Beverage Dispensers Union Local 278 is now, and has been for many years last past until suspended, as herein set forth, a member in good standing of and affiliated with the said Illinois State Federation of Labor and the Chicago Federation of Labor.

"11. That all local unions affiliated with the Illinois State Federation of Labor and the Chicago Federation of Labor are required by each of said organizations to pay a per capita tax to the said Illinois State Federation of Labor and the Chicago Federation of Labor.

"12. That this respondent is now and has been continuously since prior to the filing of the complaint herein, and since prior to the appointment on Au-

gust 16, 1940, of Roy D. Keehn, as receiver of the Bartenders & Beverage Dispensers Union Local 278, the Secretary-Treasurer of said union Local 278; that on or about to-wit: May 31, 1940, an injunction was issued pursuant to order of this court enjoining, among others, this respondent from drawing or expending any of the funds of said local union until the further order of this court, which said injunction has been at all times continuously since its issuance herein in full force and effect; that the order entered herein on August 16, 1940, appointing said Roy D. Keehn as receiver gave to said receiver sole and exclusive control of all of the funds and assets of the said union Local 278; and that since his said appointment as receiver herein no disbursements of union funds could be made without the approval or consent of said receiver.

"13. That during the period prior to the appointment of said receiver during which said injunction was in force, to-wit: May 31, 1940, to August 16, 1940, no payment was made by Local 278 to the Illinois State Federation of Labor or to the Chicago Federation of Labor for the per capita tax due to each of said organizations from Local 278 because of the provisions of said injunction enjoining expenditure of union funds.

"14. That during the period prior to December 13, 1940, and subsequent to August 16, 1940, the date of the appointment of said receiver, no payment had been made by Local 278 or by said receiver on its behalf to the Illinois State Federation of Labor or to the Chicago Federation of Labor of the per capita tax due to each of said organizations from Local 278; that during said period this respondent on several occasions requested that said receiver pay the said per capita tax due to the Illinois State Federation of Labor and to the Chicago Federation of Labor.

"15. That on December 13, 1940, this respondent received from the Chicago Federation of Labor its letter dated December 12, 1940, a copy of which is at-

tached hereto . . . and made a part hereof as fully as though the same were set forth in full at this point; that upon receipt of said letter, this respondent gave said letter to said receiver and again requested that payment be made of the per capita tax due to both the Chicago Federation of Labor and the Illinois State Federation of Labor.

"16. That thereupon the said receiver issued his check dated December 12, 1940, in the sum of $60.00, payable to the Illinois State Federation of Labor, in payment of the per capita tax then due to the Illinois State Federation of Labor, which check this respondent forthwith mailed to the said Illinois State Federation of Labor.

"17. Thereafter on or about to-wit: December 20, 1940, this affiant received from the Illinois State Federation of Labor its letter dated December 19, 1940, a copy of which is attached hereto and marked Exhibit 'C' and made a part hereof as fully as though the same were set out in full at this point; that the said check was returned to this respondent by the Illinois State Federation of Labor with the said letter.

"18. That under the terms and provisions of the constitution of the Illinois State Federation of Labor . . . . , the only grounds for suspension or expulsion of a local union by the Illinois State Federation of Labor is non-payment of the per capita tax or dues payable to the said Illinois State Federation of Labor by such local union; that Section 73 of said Constitution of the Illinois State Federation of Labor . . . is in the words and figures as follows:

" 'Section 73. When a local union or central body becomes three (3) months in arrears for dues or per capita tax, such local union or central body shall, after being fully notified, stand suspended until all arrears have been paid. Failure to pay in six (6) months shall be cause for expulsion without notice from the officials of the federation.'

"19. That Section 73 is the only provision contained in said Constitution of the Illinois State Federation of Labor pertaining to or authorizing the suspension or expulsion of a local union from the said Illinois State Federation of Labor.

"20. That under the terms and provisions of the Constitution of the Chicago Federation of Labor . . . the only applicable grounds for suspension or expulsion of a Local Union by the Chicago Federation of Labor is non-payment of the per capita tax or dues payable to said Chicago Federation of Labor by such local union; that Section 29 of said Constitution of the Chicago Federation of Labor . . . is in words and figures as follows:

" 'Sec. 29. Local unions having 100 members or less shall pay $2.00 a month in advance; unions of over 100 members shall pay two cents per member per month in advance. Any organization failing to pay its per capita tax for three (3) consecutive months, except in time of strike or lockout, shall be stricken from the roll, having been officially notified by the Financial Secretary, and shall not be readmitted until all arrears are paid in full. Any organization failing to pay its per capita tax and be in good standing 30 days prior to any election for either officers or delegates shall not be entitled to a vote, or be eligible to any office within the gift of the Federation.'

"21. That Section 29 is the only applicable provision contained in said Constitution of the Chicago Federation of Labor pertaining or authorizing the suspension or expulsion of a Local Union from the said Chicago Federation of Labor.

"22. That in view of the letter of the Chicago Federation of Labor . . ., and in view of the Constitution of the Illinois State Federation of Labor . . . and Section 73 thereof, and in view of the Constitution of the Chicago Federation of Labor . . . and Section 29 thereof, this respondent believed, and had

reasonable grounds and probable cause to believe, that the reason for the suspension of the Bartenders & Beverage Dispensers Union Local 278 from the Illinois State Federation of Labor was non-payment of the dues or per capita tax due and payable from said local union to the said Illinois State Federation of Labor, and that the statements contained in the letter complained of in the petition for contempt citation herein were true at the time said letter was circulated; and that any ordinarily prudent and intelligent man would have entertained the same belief under the same circumstances.

"23. . This respondent further alleges that at all times on and subsequent to December 30, 1940, up to and including January 6, 1941, this respondent was a candidate for President of the Bartenders & Beverage Dispensers Union Local 278, his nomination as a candidate for said office having been previous to December 30, 1940, approved by order of this court; that the election of officers of said union Local 278 was scheduled to be held and was held on January 6, 1941, under the supervision of this court; that this respondent was opposed by one Austin Steeves in his candidacy for President of said union Local 278; that this respondent was elected President of said Bartenders & Beverage Dispensers Union Local 278 at said election held on January 6, 1941, and his said election to the office of President of said local union was thereafter approved and confirmed by order of this court.

"24. That for several months prior to December 31, 1940, the internal affairs of the Bartenders & Beverage Dispensers Union Local 278 and these proceedings received extensive publicity in the daily press in Chicago; that in the editions dated January 1, 1940 [1941], of one of the Chicago daily newspapers having a circulation of more than a million copies per day, there appeared three articles, true and correct copies of which

are attached hereto and marked respectively Exhibits 'D', 'E' and 'F', each of which is made a part hereof as fully as though the same was set forth in full at this point; Exhibits 'D' and 'E' appeared in the early editions of said newspaper bearing date of January 1, 1941, which said early editions appeared on the news stands and were circulated throughout the City of Chicago generally during the evening of December 31, 1940, being New Year's Eve.

"25. That the articles set forth in Exhibits 'D', 'E' and 'F' were seen and read by practically every member of the Bartenders & Beverage Dispensers Union Local 278; that this respondent believed and had reasonable cause to believe that said articles were harmful and injurious to this respondent's candidacy for Presidency of said Local 278 in that said articles failed to state the true facts in connection with the suspension of said local from the Illinois State Federation of Labor, but intimated instead that said suspension was caused by misfeasance or malfeasance of this respondent; and that any ordinarily prudent and intelligent man would have entertained the same belief, under the same circumstances as that entertained by this respondent.

"26. This respondent further alleges that he was in no way at fault in connection with and in no way responsible for the suspension of Local 278 from either the Illinois State Federation of Labor or the Chicago Federation of Labor.

"27. That this respondent in causing to be circulated the statements contained in the letter and complained of in the petition for contempt citation did so with the purpose and intent and with the only purpose and intent of correcting any erroneous impressions which the members of the Bartenders & Beverage Dispensers Union Local 278 might have received from reading the said newspaper articles; that said letter

was circulated by this respondent in good faith in an effort to offset the said newspaper articles and to assist the members in arriving at the true facts concerning the entire matter as this respondent honestly believed them to be.

"28. That this respondent in circulating said letter did not intend to and did not in any way impede, embarrass or obstruct this court in the due administration of justice; and this respondent in circulating said letter did not intend to and did not intimidate, embarrass, impede or obstruct the said petitioner and receiver, Roy D. Keehn, in the performance of his official acts and duties as such receiver; and this respondent in circulating said letter did not intend to and did not obstruct justice or bring this court or its said receiver, Roy D. Keehn, into disrespect or public hatred, ridicule or contempt; and this respondent alleges that he has done nothing to obstruct justice or to reflect in any way upon this court or upon this receiver in the performance of his official acts and duties as such receiver, but this respondent alleges that he has the utmost respect for the dignity and authority of this court; that this respondent is informed and believes that in circulating said letter he was entirely within his rights as guaranteed to him by the Constitution and laws of the State of Illinois and the Constitution of the United States; that this respondent is not, and has never intended to be in contempt of this court and prays that he may be discharged upon the rule to show cause heretofore entered herein.

[Signed] "James Crowley"
Here follows the verification.

Attached to the answer was a copy of the constitution of the Illinois State Federation of Labor; also a copy of the constitution and by-laws of the Chicago Federation of Labor; also copies of the following letters:

"December 12, 1940.
"Mr. James Crowley, Secretary
"Bartenders & Beverage Dispensers' Union,
     Local 278
"10 North Clark Street
"Chicago, Illinois.
"Dear Sir and Brother:
  "According to our financial records, your organization has not paid its per capita tax since June, 1940, being six months in arrears.
  "Section 29 of the Constitution of the Chicago Federation of Labor provides that . . . 'Any organization failing to pay its per capita tax for three consecutive months, except in time of strike or lockout, shall be stricken from the roll, having been officially notified by the Financial Secretary, and shall not be readmitted until all arrears are paid in full.'
  "We therefore advise you that we have been obliged to close the account of your local union on our books.
                    "Yours very truly,
              "CHICAGO FEDERATION OF LABOR
                [Signed] "MAURICE LYNCH
                    "*Financial Secretary.*"

                      "December 19, 1940.
"Mr. James Crowley, Secretary-Treasurer,
"Bartenders and Beverage Dispensers' Union
     Local No. 278,
"10 North Clark Street,
"Chicago, Illinois.
"Dear Sir and Brother:
  "The Executive Board of the Illinois State Federation of Labor, at its session on December 14, decided 'that, under prevailing conditions, it would be to the best interest of the Federation and its affiliated unions to receive no further payment from the

Bartenders and Beverage Dispensers' Union Local No. 278 at this time.'

"I therefore return herewith your check for $60.00 which, as stated in your letter of December 13, you forwarded as per capita tax for the six months ending December 31, 1940.

"Fraternally yours,

[Signed] "V. A. OLANDER,

"Victor A. Olander

"Secretary-Treasurer."

There was also attached to the answer a copy of an article that appeared in the Chicago Tribune under date of January 1, 1941. The article is too lengthy to cite in full. It appeared on the front page of the paper, and across the top of the front page, in large boldface type, appeared the words, "LABOR OUSTS NITTI BAR UNION," and underneath these words appeared, in large letters, the following: "GANGDOM RULE PROMPTS MOVE BY STATE BODY—Write-In Against McLane Barred."

The article contains the following:

"Local 278 of the Bartenders' union has been expelled from the Illinois Federation of Labor. Notice of the expulsion was received yesterday by Roy D. Keehn, whom Circuit Judge ROBERT JEROME DUNNE appointed receiver of the union to free it from the clutches of the gang of Frank [The Enforcer] Nitti.

"Word that the state federation had dropped the bartenders from membership was received soon after Judge DUNNE had barred a write-in campaign against George B. McLane, business agent of the union, in the union election scheduled for Monday.

"For some time past the state federation has been outspoken against the presence of gangsters in the control of labor unions. The reason for expelling the bartenders was not stated, but it was said the federation's executive board was convinced the union was being operated as a gangster agency."

The article also contains the following:
"Ouster Viewed as Help.

"The action of the state federation in expelling the union was considered as greatly aiding the candidates led by Steeves. They are Russell Briggs, for vice president; Albert Reynolds, for secretary-treasurer; John Nagle, for recording secretary; Tony Bastone, for chaplain, and Richard Nugent, John McLaughlin, and Martin Jirgal for trustees.

" 'It shows,' Steeves said, 'that our brother unionists recognize the harm done to the bartenders' union by the Crowley-McLane group.' "

The article concluded with the following: "Expulsion from the other central bodies may follow, some labor chieftains said. Labor spokesmen said that regardless of the outcome of Monday's election, the courts and other authorities are to be encouraged to carry on the battle to purge the bartenders and affiliated unions of gang domination."

Respondent circulated his letter among the members of the union the day after the article appeared in the Chicago Tribune.

The trial court determined the issues on the contempt proceedings upon the petition and the answer. The court held that the conduct of respondent in circulating the letter constituted contempt of court; that it caused disrespect for the court "and was disruptive of the orderly processes of this court and the administration of the receivership herein." The court in its judgment order absolved respondent from any intention to impede the administration of justice but held that as the circulating of the letter amounted to a contempt the lack of intention to commit contempt could not justify the act.

Five points are made by respondent in support of his contention that the order entered should be reversed. It is only necessary to consider one. The respondent contends that "it conclusively appears that

respondent was not guilty of contempt of court,'' and that ''it was error for the trial court to find respondent guilty of contempt and fine him when his answer, which was conclusive, purged him of contempt. The trial court adjudged conduct to be contemptuous which under the law was not and could not have been contempt of court.'' A brief has been filed on behalf of The People and we have searched in vain to find any answer in the brief to respondent's instant contention, although answers to other points urged by respondent are made. The instant petition was based upon the theory that the statement contained in respondent's letter to the membership of the union ''that your Local was suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because the Receiver failed to pay the per capita tax to these organizations when due,'' and also the statement contained in the letter that ''although I have requested him again and again since his appointment six months ago, to pay these obligations on time,'' were false and were known to the respondent to be false at the time the letter was circulated. The petition asked the court to hold respondent in contempt because of the said statements. Respondent, in his answer, denied that these statements were false and alleged that they were true, and this answer by respondent must, of course, be taken as true. The action of the court in assuming charge of the election was one that he was not obliged to assume, and such action, therefore, was in the nature of an extrajudicial act. The court, in his order directing the receiver to conduct an election, justifies such action upon the ground that it was for the benefit of the members of the union that a *fair and impartial election be held.* Respondent, at the time he wrote the letter, was the secretary-treasurer of the union and was also a candidate for president of the union at the election. Austin Steeves was also a candidate for

the office of president. Upon the eve of the election the Chicago Tribune published the article in question and respondent had a right to assume that practically all of the members of the union read it. It, in effect, charged that the Union was being operated and ruled by vicious gangsters, and clearly implied that respondent, as well as other officials of the union, were dominated by the underworld. The article stated: "It was said the federation's executive board was convinced the union was being operated as a gangster agency," and that the suspension of the union by the State Federation was prompted by that fact. The article concludes: "Labor spokesmen said that regardless of the outcome of Monday's election, *the courts and other authorities are to be encouraged to carry on the battle to purge the bartenders and affiliated unions of gang domination.*" (Italics ours.) Respondent earnestly contends that the Tribune article was inspired by the receiver and that he, respondent, was grievously wronged by the article and his candidacy seriously affected by it. It will be noticed that the article condemns the candidacy of respondent and praises the candidacy of Steeves, who was opposing respondent. No one could reasonably contend that respondent had not the right to address the members of the union in reference to the charges contained in the newspaper article. As one of the plain purposes of the article was to injure the candidacy of respondent, it would be against every rule of fair play to deny him an opportunity to answer it. He had the undoubted right to make a proper campaign in support of his candidacy and to state the facts as to the reason why the Illinois State Federation of Labor suspended the union. If he had remained silent many of the members of the union would undoubtedly have believed the charges made in the newspaper article and would have cast their votes for Steeves. If it be assumed that the holding of the election was not an

extrajudicial act, nevertheless, it seems clear that the letter had no tendency to impede, interfere with or obstruct the court in the administration of justice in the cause that was pending before him. In the determination of the contempt proceedings the trial court was bound to assume that the receiver failed to pay the dues and that the suspension of the union followed as a result of that failure.

Respondent was one of the defendants to the complaint and one of the plaintiffs in the counterclaim. He was secretary and treasurer of the union. If he had presented to the trial court a petition that alleged that the union had been suspended by the Illinois State Federation of Labor and the Chicago Federation of Labor because "the Receiver failed to pay the per capita tax to these organizations when due, although I have requested him again and again since his appointment six months ago to pay these obligations on time," such a petition would not constitute contempt of court. If a receiver is negligent in his duties the knowledge of that fact, when brought home to the court, would aid, not impede, the court in the administration of justice in the cause. It is not the law that a receiver in the performance of his duties is immune from criticism. If a receiver is slandered or libeled he has his redress in a personal action against the slanderer or libeler. Upon a number of occasions honest and courageous criticism of the conduct of certain receivers has resulted in the exposure of illegal and scandalous conduct by such receivers. It is our considered opinion that to deny the respondent the right to send the letter to the members of the union would be to deprive him of the right of free speech.

The receiver presented his petition to the trial court just two days before the election was held and respondent is justified in contending that the filing of the petition on the eve of the election was a plain effort to unfairly injure his candidacy. The further

contention of respondent that the trial court might well have treated the presentation of the petition at the time in question as a contemptuous act is not without force, as the trial court, in its order, had directed the receiver to hold an election in such a manner that the members of the union might elect their officers without being improperly influenced. The receiver, in all fairness, should not have presented the petition just before the election. It is due respondent to say that the trial court stated during the instant proceedings that he had investigated the record of respondent and found it to be clean.

It would amount to a miscarriage of justice to permit the order in question to stand, and the judgment order of the circuit court of Cook county appealed from is therefore reversed.

*Judgment order reversed.*

SULLIVAN and FRIEND, JJ., concur.